Craig A. Crispin, OSB No. 82485
crispin@employmentlaw-nw.com
Charese A. Rohny, OSB No. 95396
charese@employmentlaw-nw.com
**CRISPIN EMPLOYMENT LAWYERS**
500 Plaza West, 9600 SW Oak Street
Portland, Oregon 97223
Telephone:  503.293.5770
Telefax:   503.293.5766
Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| MITCHELL HERGERT and<br>JOHN RUSSELL,<br><br>               Plaintiffs,<br><br>       v.<br><br>CITY OF PORTLAND, a municipality, and<br>LIEUTENANT JEFFREY KAER,<br>COMMANDER STEVEN BECHARD,<br>ASSISTANT CHIEF JIM FERRARIS, and<br>CAPTAIN DARRYL SCHENCK, in their<br>individual capacity,<br><br>               Defendants. | Civil No.  05-849-KI<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF**<br><br>(42 U.S.C. § 1983, Retaliation, Whistleblower Protection Statute, ORS 659A.203; Freedom of Speech violations of First Amendment)<br><br>**DEMAND FOR JURY TRIAL** |

### NATURE OF THE ACTION

1.  This is an action under 42 U.S.C. § 1983 to compensate plaintiffs for defendants' deprivation of plaintiffs' constitutional rights.  Plaintiffs allege they were retaliated against for speech protected by the First Amendment, namely protesting public employee's actions, and actions of management, all of which were matters of public concern, including but not limited to

police preparedness, violations of general orders, efficacy and serious violations and misconduct by public employees for which they suffered retaliatory acts after they reported the matters of public concern. Plaintiffs further seek injunctive relief.

2. This is also an action under ORS 659A.203 to vindicate plaintiff's rights and the rights of other employees to work in environments free from retaliation for whistleblowing and to make plaintiffs whole.

## JURISDICTION AND VENUE

3. This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202. This action is authorized and instituted pursuant to 42 U.S.C. §§ 1983 and 1988.

4. The court has jurisdiction over plaintiffs' state law claims set forth in this complaint pursuant to its supplemental jurisdiction to hear related state law claims under 28 U.S.C. § 1367(a). Both the federal and state claims alleged herein arose from a common nucleus of operative fact, the state actions are so related to the federal claims that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

5. The employment practices alleged herein were committed in the District of Oregon.

## PARTIES

6. Plaintiffs, Mitchell Hergert and John Russell residents and citizens of Oregon and, at all material times, were and are public employees serving as detectives for defendants City of Portland and Portland Police Bureau. Hergert has been with the Portland Police Bureau for approximately 12 years, and Russell for approximately 11 years.

7.　At all material times, defendant City of Portland ("the City") was and is a municipality, organized and existing as a municipal corporation and governmental subdivision under the laws of and within the State of Oregon.  The City was and is an employer for purposes of the employment statutes alleged herein.

8.　At all material times, Portland Police Bureau, is an entity within the municipality of the City of Portland and a political subdivision organized under existing state law as a public employer within the meaning of ORS 659A.200(3) and 659A.203.

10.　At all material times, individual defendants Lieutenant Jeffrey Kaer ("Kaer"), Commander Steven Bechard ("Bechard"), Assistant Chief Jim Ferraris ("Ferraris") and Captain Darryl Schenck ("Schenck") are persons and residents within the state of Oregon who are authorized to act on behalf of the City with respect to control, management or supervision of public employees.

11.　At all material times, defendant Ferraris was and is an individual resident and citizen of Oregon and is the chief of the Portland Police Bureau, and employee for the City of Portland.  At all material times, the City charged Ferraris with, or he assumed with the City's knowledge and acquiescence, supervisory authority over plaintiff and over the agents and employee of the City's police department.  At all material times, Defendant Ferraris possessed policy-making authority for City, and was acting within the course and scope of his employment and under color of state law.  At all material times, Ferraris was aware of, directed or acquiesced in, the adverse actions taken against plaintiffs by the City's employees.

12.　At all material times, defendant Lieutenant Kaer was and is an individual resident and citizen of Oregon and is employed as a supervisor for the City of Portland and its Police Bureau.  At all material times, Kaer was acting within the course and scope of his employment

and under color of state law. At all material times, Kaer was aware of, directed or acquiesced in, the retaliatory and adverse actions taken against plaintiffs by himself and public employees.

13. At all material times, defendant Commander Bechard was and is an individual resident and citizen of Oregon and is employed as a supervisor for the City of Portland and its Police Bureau. At all material times, Bechard was acting within the course and scope of his employment and under color of state law. At all material times, Bechard was aware of, directed or acquiesced in, the adverse actions taken against plaintiffs by Department employees.

14. At all material times, defendant Captain Schenck was and is an individual resident and citizen of Oregon and is employed as a supervisor for the City of Portland and its Police Bureau. At all material times, Schenck was acting within the course and scope of his employment and under color of state law. At all material times, Schenck was aware of, directed or acquiesced in, the adverse actions taken against plaintiffs by Department employees.

## PROCEDURAL REQUIREMENTS

15. All tort claim prerequisites to filing this action have been timely satisfied. All administrative prerequisites to filing this action have been timely satisfied.

## FACTUAL ALLEGATIONS

16. On September 25, 2003, Detective Hergert spoke to Sergeant Brooks and reported serious misconduct by Sergeant Kimberly Adams, and added that he felt he was working in a hostile work environment. Sgt. Brooks forwarded the email to Lt. Kaer.

17. On September 29, 2003, Detective Russell turned in a nine page report to Lt. Babnick, Internal Affairs and to Commander Mike Pace. Among other misconduct, the nine page document reported the following serious misconduct:

    a. Sgt. Adams ordered Detectives Hergert and Russell to investigate a suspicious death call at a motel in Portland in a manner which violated the Dead

Page 4 – **SECOND AMENDED COMPLAINT**       CRISPIN EMPLOYMENT LAWYERS
500 Plaza West, 9600 SW Oak Street
Portland, Oregon 97223-6597
Telephone: 503.293.5770

Body Procedure covered in General Orders (G.O.) 631.10. Adams' orders required the investigation begin before the Medical Examiners arrived which violated Police Bureau policy.

b.  After Hergert and Russell began investigating the scene, consistent with G.O. 631.10, they contacted Adams to report that some personal property had been stolen off the deceased's body, suggesting foul play, and that they needed to investigate further by taking witness(es') statements. They requested that Adams permit them to go the hospital, as urged by the wife of the victim, and communicate with a cousin who was the last person to have contact with the victim. Adams refused to allow them to take witness(es') statements to complete their investigation and ordered them to come back to the office immediately as it was near the end of their shifts and no overtime was authorized. Russell reported that this resulted in an incomplete investigation. This concerned Russell as a matter of public safety and humiliated him when he had to report to the victim's the wife that he was ordered to cease the investigation.

c.  On another occasion, Adams instructed Russell and Hergert to investigate a home invasion robbery. At the scene there was a safe that the homeowner said was full of illegal drugs. Adams ordered both to conduct a hurried investigation and instructed Russell to leave the safe, which Russell felt there was no reason not to seize. Later Russell and Hergert discussed with Adams the multiple violations of G.O. 640.10 which she had ordered at the scene, such as instructing plaintiffs to talk with witnesses before talking with the crime scene supervisor. At that scene, Adams insisted that they only conduct a "minimal" investigation. Russell reported how this meeting frustrated him and Hergert, and that it was only one

Page 5 –**SECOND AMENDED COMPLAINT**

example of many occasions in which she violated several G.O's and interfered with a major crime scene and investigation.

d.     Russell reported that on another occasion that he and Hergert completed the appropriate memoranda and training applications to attend a specialized crime scene class in Eastern Oregon.  The memorandum was given to Adams, the first appropriate person in the chain of command.  Adams refused to send the memoranda and applications further in the chain of command which violated relevant G.O.'s.

18.    On or about September 30, 2003, Hergert spoke with Commander Pace about fear of retaliation for the reports he made regarding Adams.

19.    On or about October 13, 2003, Hergert reported serious misconduct by Adams to Lt. Kaer.   At that time, Lt. Kaer chastised Hergert for going outside the chain of command.

20.    On or about October 29, 2003, Hergert contacted Sgt. Sue Kruger, Internal Affairs (I.A.), and requested an interview with I.A.

21.    On October 31, 2003, Hergert spoke with Commander Bechard regarding his complaints about Adams' serious misconduct.  Bechard was intimating and threatening during that meeting and threatened a retaliatory transfer of Hergert to a different department.

22.    On or about November 4, 2003, Russell provided a detailed statement reporting serious misconduct on matters of public concern to I.A. during his first I.A. interview.

23.    On or about November 25, 2003, Hergert provided a detailed statement reporting serious misconduct on matters of public concern to I.A. during his first I.A. interview.

24.    The combined statements made by Detectives Hergert and Russell resulted in plaintiffs reporting violations by a public official and management involving actions which included: criminal behavior in violation of ORS 133.140 (Ordered Not to Arrest Subject with a

Page 6 – **SECOND AMENDED COMPLAINT**

Warrant)(Russell reported that he was ordered by Adams not to arrest a suspect with a felony warrant which involved a homicide investigation); ORS 166.065 (Harassment); ORS 162.415 (Criminal Misconduct); General Order violations including violations of G.O. 640.10 (Crime Scene Processing); G.O. 631.10 (Dead Body Procedure – Homicide Investigation); G.O. 330.00 (Investigator Responsibilities – Confidential Integrity of case); G.O. 315.00 (Laws, Rules & Orders); G.O. 840.00 (Arrest with Warrant); G.O. 310.50 (Truthfulness); G.O. 310.40 (Courtesy); G.O. 310.00 (Conduct, Professional); G.O. 315.30 (Unsatisfactory Performance); G.O. 310.70 (Dissemination of Information); and G.O. 910.00 (Field Reporting Handbooks Instructions); and violations of the terms of the collective bargaining agreement including Section 43.11 (12-hour rule)(Russell filed a union grievance); Section 20.11 (Discipline)(Hergert filed a union grievance); and Section 23.3 (45-day Transfer Notice).

25.    At all material times, defendants were acting under color of state law.

26.    The conduct which plaintiffs reported demonstrated defendants' abuse of authority, and substantial and specific danger of public health and safety as a result of the defendants' action.

27.    As a result of plaintiffs exercising their constitutionally protected speech and/or their whistleblowing violations of serious misconduct, plaintiffs were subject to retaliation, including but not limited to the following:

    a.    On or about October 12, 2003, plaintiffs were shunned by co-workers at a homicide crime scene.

    b.    On or about October 16, 2003, Lt. Kaer denied Hergert pay for work because "Russell filed a grievance."

c.    On or about October 16, 2003, Sgt. Brooks reprimanded Russell for going outside the chain of command and filing a complaint, and asked that he apologize to Lt. Kaer.

d.    On or about October 22, 2003, plaintiff Russell learned from Sgt. Brooks that Kaer had threatened a retaliatory transfer of Russell out of Kaer's department and to the Tactical Operations Division, Gang Enforcement Team (TOD/GET) unit.

e.    On or about October 29, 2003, Sgt. Dolby overheard Lt. Kaer and Sgt. Brooks stating that Hergert's career is not salvageable, that Hergert and Russell need to be separated, and that one of them needs to go to TOD/GET, and that Hergert and Russell are "the problem."

f.    On October 29, 2003, Lt. Kaer called Russell into his office. This was the first time Kaer had spoken with Russell since Russell's nine page report on September 29, 2003. During that conversation Kaer threatened Russell by comparing Russell's reporting misconduct and the effect that would happen to Russell to that of an officer who was put on administrative leave for a criminal act, the officer was almost fired and almost went to jail.

Kaer began the meeting by telling Russell that Adams had given her I.A. interview already and she talked along time. Kaer showed Russell the interview tapes. Kaer said he doubted Russell would talk that long since he is "quiet." Kaer then gave Russell a revised I.A. Notice listing Portland Police Bureau as the

complainant instead of Russell. This was intended as a warning to Russell. Russell then told Kaer that he was concerned of now being ambused in an I.A. interview because the notice listed Sgt. Adams and the Bureau as complainants. Kaer laughed and then tried to talk Russell out of hiring an attorney. Russell explained how stressed he had become since reporting the misconduct. Kaer minimized it and kept insisting that Russell not hire an attorney.

Kaer then said that he had to warn Russell that he would be subject to accusatory questions in his I.A. interview. Kaer compared Russell's reporting misconduct to situation involving another officer in which that officer was "10-2" (a required administrative leave for serious criminal investigations that embarrass the Bureau). The situation Kaer referred to involved the officer being put on administrative leave for an extended period of time while the district attorney investigated whether to charge the officer with assault and kidnapping. This meeting was intended to threaten and coerce Russell not to proceed with the complaint because the consequences would be grave and humiliating.

g.      On October 31, 2003, Lt. Kaer threatened to discipline Hergert after he requested legal counsel. In retaliation for a October 16, 2003 memorandum that Hergert returned to Commander Bechard stating Hergert would not be available for an I.A. interview on October 24, 2003 due to a "doctor's appointment and because he needed more time for legal representation," Lt. Kaer threatened

Hergert with insubordination and discipline in a memorandum to Hergert dated October 31, 2003.

h.      On October 31, 2003, Hergert spoke with Commander Bechard regarding his fear of retaliation.  During that meeting, Bechard responded to Hergert in an offensive, intimidating manner and threatened to transfer Hergert.

i.      On November 11, 2003, in retaliation for Hergert's exercising his rights, Asst. Chief Ferraris transferred Hergert to a less favorable position in the gang unit (TOD/GET) resulting in a loss of overtime pay, and a loss of seniority, which also had a negative impact on the shifts Hergert could work.

j.      In retaliation for making the complaint, under the direction of defendant Schenck, the Internal Affairs Notice to Russell and Hergert, which listed Adams as the complainant against Russell, instead of Russell against Adams.

k.      On November 11, 2003, Kaer told Russell that the chief's office is "salivating to '10-2'" him.  On that same day Lt. Kaer conducted his I.A. interview of Russell asking Russell numerous questions that were outside of the scope of the investigation (violating the union contract and Officer's Bill of Rights).  Throughout the interview, he degraded Russell for filing the complaint. Kaer also told Russell during that meeting that he and Hergert were being looked at for insubordination since they requested extensions to hire an attorney before giving a statement.

   l. On or about November 13, 2003, Russell went on stress leave and sought medical attention.

   m. On or about November 18, 2003, Hergert went on stress leave and sought medical attention.

   n. On or about December 1, 2003, Kaer called Hergert at home and ordered him to come in and do I.A. interview against the orders from Hergert's medical providers.

   o. After plaintiff Hergert filed his complaint, he was denied the position as a "coach" a position which receives a 10 percent pay increase for training a trainee.

  28. In response to plaintiffs' complaints concerning Adams' conduct, Kaer continued to blame plaintiffs for the reported issues and labeled plaintiffs as the problem.

  29. As further retaliation of plaintiffs exercising their free speech rights, under the direction of defendant Schenck and as a result of a custom or policy, the I.A. investigation conducted by Sgt. Krueger, was incomplete, and focused solely on the lesser issues in plaintiffs' complaints.  When plaintiffs requested an investigation into what they complained I.A. failed to properly investigate.  Schenck had actual or constructive notice of internal affairs investigative procedures used.  As a result of Schenck's gross negligence, and or reckless disregard to plaintiff's constitutional rights, the investigation contained several violations of procedures established to ensure the fairness, trustworthiness and accuracy of I.A. investigations, including but not limited to failing to investigate, conducting an incomplete investigation, and failing to make findings on the more serious complaints, failing to communicate with all relevant witnesses, and failing to conduct necessary follow-up.  Schenck neglected his duty to supervise and direct subordinates to properly investigate, and thereby failed to prevent the violation of plaintiffs' constitutional rights.

30. On or about March 11, 2004, plaintiffs filed official complaints with the State of Oregon's Bureau of Labor and Industries ("BOLI").

31. Following their formal I.A. complaints and their March BOLI complaints, plaintiffs were discriminated against, harassed and retaliated against. On or about March 31, 2004, Kaer further retaliated by stating to a city official at the Fireman's and Police Retirement and Disability Fund charged with handling both plaintiffs' disability claims that Russell was being investigated for insubordination and untruthfulness and alleged that Hergert was insubordinate and was failing to cooperate in the I.A. investigation. Both of which were inaccurate statements intended to retaliate and interfere with plaintiffs' rights and disability claims.

32. On or about October 2004, in retaliation for Russell's filing internal complaints and exercising his free speech rights, Commd'r Bechard denied plaintiff Russell's request for a transfer upon his return from medical leave. Bechard required Russell work under the supervision of Lt. Kaer the same supervisor who Russell filed a complaint against and requested he be transferred from.

33. On or about June 2005, Russell again requested to be transferred from working under the supervision of Kaer to working in the Child Abuse Team. In retaliation for Russell's filing internal complaints and exercising his free speech rights, Commd'r Bechard again retaliated and denied Russell's request for a transfer.

/////

/////

/////

/////

Page 12 –**SECOND AMENDED COMPLAINT**          CRISPIN EMPLOYMENT LAWYERS
                                                500 Plaza West, 9600 SW Oak Street
                                                Portland, Oregon 97223-6597
                                                Telephone: 503.293.5770

# FIRST CLAIM FOR RELIEF

## AGAINST ALL DEFENDANTS WITH RESPECT TO PLAINTIFF HERGERT
## AND AGAINST DEFENDANTS KAER, SCHENCK, BECHARD AND THE CITY
## WITH RESPECT TO PLAINTIFF RUSSELL

**(Violations of 42 U.S.C. § 1983 – Free Speech Retaliation)**

34. Plaintiff incorporates by reference the allegations of paragraphs 1 through 33.

35. Plaintiffs complaints to the City, the Bureau, the Internal Affairs Department and the individual defendants implicated matters of public concern, including but not limited to: (1) misuse of power, resources, and authority by a management level public employee of the City; and (2) substantial and specific danger to public health and safety.

36. Defendants acted under color of state law, and in the course and scope of their employment and violated plaintiffs' rights under the First Amendment right to freedom of speech when the City retaliated against plaintiffs for speaking out on matters of public concern. The retaliation includes, but is not limited to: (1) the alterations of the terms and conditions of plaintiffs' employment; (2) transferring both plaintiffs to positions and units they did not want to work at; (3) reporting false information in an attempt to affect their disability rights and claims; (4) retaliating against plaintiff Russell by refusing to transfer him to a preferable position; (5) denying plaintiffs the benefit and opportunity of "on-call duty;" (6) depriving plaintiffs the benefit in pay and rank of "acting Sergeant," and (7) defaming plaintiffs' professional reputations and all other retaliatory actions described above in this complaint.

37. Plaintiffs suffered deprivations of their constitutional rights by defendants under color of state law because:

      (a)    the violation they suffered was pursuant to a longstanding practice or custom instituting the standard operating procedure of the City; or

      (b)    Kaer, Bechard, Ferarris and Schenck, were officials with final policy-making authority; or

      (c)    subsequent decision-makers higher up the chain ratified the retaliatory actions; or

      (d)    subsequent decision-makers with the duty to thoroughly investigate plaintiffs complaints and prevent retaliation, ratified the retaliation.

38.    As a direct and proximate result of defendants' previously described wrongful conduct and violations of plaintiffs' constitutionally guaranteed rights, plaintiffs have suffered economic damages and the loss of certain employment benefits and are entitled to recover their lost wages, past and future, and medical expenses and other incidental expenses incurred in connection with their injuries caused by the actions alleged herein in an amount to be determined at the time of trial.

39.    As a further result of the City's violations of plaintiffs' constitutionally guaranteed rights alleged herein, plaintiffs suffered and continues to suffer severe emotional distress, mental pain and anguish, damages for impaired reputation, and humiliation and other non-economic compensatory damages sufficient to compensate them for emotional pain and suffering and other non-economic losses, in an amount found appropriate by a jury.

40    As a result of the unlawful actions alleged herein, plaintiffs are entitled to equitable relief including but not limited to an expungement of all references to untrustworthiness and insubordination in their personnel files.

41.    Defendants Kaer, Bechard, Ferraris and Schenck's conduct in their individual capacity was intentional, deliberately indifferently and/or was acting in reckless disregard for

plaintiffs' federally protected rights.  Such conduct exceeds the bounds of social toleration and is of a sort that would be deterred by an award of punitive damages.  Plaintiffs are entitled to recover from each defendant, which a 42 U.S.C. § 1983 claim is plead against and proven, punitive damages in an amount found appropriate by a jury to punish defendants and to deter similar conduct by these defendants and others in the future.

42. Plaintiff was required to hire an attorney to prosecute this action and is entitled to an award of reasonable attorneys fees, expert fees and costs incurred herein, pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANT CITY OF PORTLAND

## (ORS 659A.203 – Public Employee Whistleblower Claim)

43. Plaintiffs reallege and incorporate paragraphs 1 through 36.

44. Plaintiffs disclosure to their superiors of serious misconduct by a public official was a disclosure that plaintiffs reasonably believed was evidence of a violation of law and mismanagement, gross waste of funds, abuse of authority, and/or a substantial and specific danger to public health and safety pursuant to ORS 659A.203 resulting from public action.

45. The City and Bureau retaliated as alleged above and treated plaintiffs as the problem, threatened discipline, threatened transfers, transferred plaintiffs to less desirable job positions, interfered with plaintiffs' disability claims, and accused both plaintiffs of insubordination and untruthfulness.

46. The actions of the City, its agents and employees acting within the course and scope of their duties as set forth above and incorporated into this paragraph violated plaintiffs rights under ORS 659A.203.

Page 15 –**SECOND AMENDED COMPLAINT**    CRISPIN EMPLOYMENT LAWYERS
500 Plaza West, 9600 SW Oak Street
Portland, Oregon 97223-6597
Telephone: 503.293.5770

47.     As a direct and proximate result of defendant's wrongful conduct, plaintiffs have suffered non-economic and economic damages and are entitled to an award of lost wages and benefits in an amount to be determined, plus prejudgment interest.

48.     Plaintiffs are entitled to recover their reasonable attorney fees and costs pursuant to ORS 659A.885(a).

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs request the court to:

1.     Assume jurisdiction over each of the causes set forth herein.

2.     A declaration that the City has violated plaintiffs' constitutionally protected rights and an order requiring defendant to correct this deficiency.

3.     Grant a permanent injunction enjoining defendant, its owners, officers, management personnel, employees, agents, successors, and assigns, and all persons in active concert or participation with defendant, from engaging in any employment practice which retaliates against an employee on the basis of their exercising their right to free speech and whistleblowing matters of public concern on such terms as the court may direct.

4.     Grant equitable relief including but not limited to an expungement of all references to untrustworthiness and insubordination in their personnel files.

5.     Order defendant to create, implement and carry out policies, practices and programs providing for equal employment opportunities which affirmatively eradicate the effects of past and present unlawful employment practices, on such terms as the court may direct.

6.     Order defendants to make plaintiff whole by compensating both plaintiffs for past and future pecuniary losses, including expenses, impairment of earning capacity, lost past and

future earnings and benefits of employment, and such other losses as are awarded by a jury or otherwise established at trial.

7.      Order defendants to pay plaintiffs awards of compensatory damages for non-pecuniary losses, including physical and emotional injury, pain and suffering, mental anguish, humiliation, and embarrassment, and loss of enjoyment of life in an amount to be determined by a jury.

8.      Order defendants to assess an award of punitive damages against the individual defendants in an amount to be determined by a jury.

9.      Award plaintiffs their costs of suit and his reasonable attorney fees, costs and expert witness fees pursuant to 42 U.S.C. § 1988 and ORS 659A.885.

10.     Order defendants to pay prejudgment and post judgment interest, as appropriate, on all amounts due to plaintiffs as a result of this action.

11.     Order such further or alternative relief in favor of plaintiffs as the court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all questions of fact or combined questions of law and fact raised by this complaint.

CRISPIN EMPLOYMENT LAWYERS

*Charese A. Rohny*
Charese A. Rohny, OSB No. 95396
Of Attorneys for Plaintiff